FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Mar 06, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHAWNTELLE A.,[1]

               Plaintiff,

     v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

               Defendant.

No.   4:21-cv-5141-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, REVERSING THE ALJ DECISION, AND REMANDING FOR AWARD OF BENEFITS**

      Plaintiff Shawntelle A. appeals the denial of benefits by the Administrative Law Judge (ALJ).  The ALJ reversibly erred by improperly discounting the disabling medical opinion of Plaintiff's treating physician and by misconstruing critical portions of Plaintiff's symptom testimony.  Because the Court finds further proceedings would not be useful, and because Plaintiff would clearly be considered disabled if the improperly rejected evidence is credited, the Court reverses the decision of the ALJ and remands for an immediate award of benefits.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff."  *See* LCivR 5.2(c).

# I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. § 404.1520(a).

[3] *Id.* § 404.1520(a)(4)(i), (b).

[4] *Id.* § 404.1520(a)(4)(ii), (c).

[5] *Id.* § 404.1520(a)(4)(iii), (d).

[6] *Id.* § 404.1520(a)(4)(iv).

[7] *Id.* § 404.1520(a)(4)(v), (g).

## II.    Background

In April 2016, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability based on post-traumatic stress disorder (PTSD), diabetes, multiple sclerosis (MS), depression, muscle pain, cognitive issues, muscle spasms, incontinence, insomnia, anxiety, and vision problems.[8]  She alleged an onset date of April 6, 2015.[9]  The agency denied both applications initially and on reconsideration.  Plaintiff then requested a hearing before an ALJ.

### A.    The 2018 ALJ Hearing & Decision

In May 2018, ALJ Wayne Araki held a hearing at which Plaintiff and a vocational expert testified.[10]  In September 2018, ALJ Araki issued a denial.[11]  However, in August 2020, this Court reversed the 2018 decision and remanded the matter for further proceedings due to the ALJ improperly rejecting the opinions of treating physician Nathan Lilya, DO, and treating provider Patty Jordan, intern therapist.[12]  The Court instructed the Commissioner to reassess those opinions as well as Plaintiff's symptom reports.

---

[8] AR 255, 262, 299.

[9] Plaintiff initially alleged an onset date of April 6, 2013, but later amended it. AR 255, 262.

[10] AR 34–73.

[11] AR 17–28.

[12] AR 1683–93.

**B.    The 2021 ALJ Hearing & Decision**

In July 2021, ALJ Mark Kim held a hearing on remand at which Plaintiff and a vocational expert testified.[13]

### 1.    <u>Plaintiff's Testimony</u>

At the 2021 hearing, Plaintiff's testimony focused largely on her MS symptoms. Plaintiff reported suffering daily from fatigue and a lack of energy, but she explained that her biggest barrier to employment is "the unpredictability of the [MS] flare ups."[14] She said her symptoms during a flare vary widely, and she distinguished between what she considered a "big" flareup versus a "small" flareup.

Plaintiff testified that her small flareups occur frequently, "at least monthly," and they last "anywhere from 20 minutes to a couple of days."[15] She described small flareups as often causing cognitive issues (such as forgetfulness), muscle pain, as well as "pins and needles" feelings, particularly in her legs.[16] Plaintiff said her flareups can cause her to experience bladder urgency, which can then be complicated by being unable to urinate despite the urgent feeling, and this

---

[13] AR 1603–41. Unless otherwise noted, reference to "the ALJ" refers to ALJ Kim.

[14] AR 1610, 1626.

[15] AR 1611, 1623.

[16] AR 1613–14, 1620. *See also* AR 47–48.

has led to making multiple trips to the restroom, needing to stay in the restroom for extended periods, and incontinence.[17]

Plaintiff stated she did not consider a flare to be "big" unless it involved severe muscle pain, severe brain fog, and/or vision loss.[18]  She reported that big flareups happen "probably a couple times a year" and can last up to a month, even with treatment.[19]  Plaintiff also said there was not much that could be done about her MS symptoms, and unless she was suffering from a big flareup, she tries "to just live with them."[20]

### 2.   The ALJ's Determination & Findings

Shortly after the hearing, the ALJ issued a decision finding Plaintiff not disabled.[21]  As to the sequential disability analysis, the ALJ found as follows:

- Plaintiff met the insured status requirements through September 30, 2016.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 6, 2015, the alleged onset date.

---

[17] AR 1621–22.

[18] AR 1611–12, 1618–19,

[19] AR 1611. *See also* AR 48–60.

[20] AR 1619, 1630.

[21] AR 1569–83.

- Step two: Plaintiff had the following medically determinable severe impairments: MS, periodic visual disturbance, obesity, depression, and borderline personality disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work, subject to the following additional limitations:

  o she can stand and/or walk for 30 minutes at a time;

  o she cannot climb ladders, ropes, or scaffolds but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs;

  o she should avoid unprotected heights and occasional exposure to extreme temperatures; and

  o she is limited to simple, routine tasks with a reasoning level of 2 or less.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as Assembler, Small Products; Ticket Taker; and Parking Lot Attendant.[22]

---

[22] AR 1582.

In reaching his decision, the ALJ gave:

- "substantial weight" to the November 2016 opinion of examining physician Alexander Patterson, PsyD;

- "partial weight" to the July 2015 opinion of treating provider Regan Eberhart, LICW, and the October 2016 opinion of state-agency reviewing physician Howard Platter, MD;

- "some weight" to the June 2016 opinion of state-agency reviewing physician Carla van Dam, PhD;

- "less weight" to the December 2016 opinion of state-agency reviewing physician John Robinson, PhD, and the August 2015 opinion of treating physician Nathan Lilya, DO;

- "little weight" to the December 2012 opinion of examining physician Mark Duris, PhD; and

- no weight to the August 2015 opinion of treating provider Patty Jordan, Care Coordinator and Therapist Intern.[23]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were

---

[23] AR 1573–78.

1   "not entirely consistent" with the medical evidence and other evidence.[24]  Likewise,

2   the ALJ gave little weight to the lay statements from Plaintiff's husband.[25]

3       Plaintiff requested review of the ALJ's decision by the Appeals Council,

4   which denied review.[26]  Plaintiff timely appealed to the Court.[27]

### III.   Standard of Review

6       A district court's review of the Commissioner's final decision is limited.[28]

7   The Commissioner's decision is set aside "only if it is not supported by substantial

8   evidence or is based on legal error."[29]  Substantial evidence is "more than a mere

9   scintilla but less than a preponderance; it is such relevant evidence as a reasonable

10  mind might accept as adequate to support a conclusion."[30]  Moreover, because it is

11  the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

12  upholds the ALJ's findings "if they are supported by inferences reasonably drawn

13  from the record."[31]  The Court considers the entire record, and the Court may not

---

[24] AR 1576.

[25] AR 1581.

[26] AR 1–6.

[27] *See* 20 C.F.R. §§ 404.981, 422.201.

[28] 42 U.S.C. § 405(g).

[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[30] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[31] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

reverse an ALJ decision due an error that "is inconsequential to the ultimate nondisability determination."[32]

## IV.    Analysis

Plaintiff asserts the ALJ committed harmful error by (1) discounting certain medical opinions without adequate cause, (2) improperly assessing Plaintiff's testimony, and (3) relying upon representative occupations that either conflict with the assessed RFC or do not truly exist in sufficient numbers in the national economy.[33]  As discussed below, Court agrees that the ALJ failed to provide specific and legitimate reasons for discounting a disabling medical opinion.  The Court also finds the ALJ misconstrued key aspects of Plaintiff's symptom testimony.

### A.    Medical Opinions: Plaintiff establishes consequential error.

Based on Plaintiff's disability-application filing date, the medical opinions of record are to be assessed based on the nature of the medical relationship the claimant had with the medical provider.  If a treating or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons; when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[34]  Similarly, a

---

[32] *Molina*, 674 F.3d at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

[33] *See generally* ECF No. 11.

[34] *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

1    reviewing physician's opinion may be rejected for specific and legitimate reasons

2    supported by substantial evidence.  The opinion of an "other" medical source may

3    be rejected for specific and germane reasons supported by substantial evidence.[35]

4        **1.**    **<u>Treating Physician Nathanial Lilya, DO</u>**

5          In 2014, Nathanial Lilya, DO, started treating Plaintiff as her primary care

6    physician.  Dr. Lilya reviewed some of Plaintiff's prior medical records and noted

7    the diagnosis of MS and related symptoms.[36]  Dr. Lilya went on to treat Plaintiff

8    for her MS and other conditions through at least June 2016, seeing her on dozens

9    of occasions over those two years.[37]

10        *a.*      *<u>Dr. Lilya's Medical Opinion</u>*

11          In August 2015, Dr. Lilya completed a WorkFirst form entitled

12    "Documentation Request for Medical or Disability Condition" on behalf of

13    Plaintiff.[38]  Dr. Lilya diagnosed Plaintiff with returning-remitting MS and stated

14

15

16    [35] *Molina*, 674 F.3d at 1111; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

17    1995); *see also* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source

18    for claims filed before March 27, 2017).

19    [36] *See, e.g.*, AR 763–72, 789–90.

20    [37] *See, e.g.*, AR 785–90 (May 2014: "presents to the practice today for a transition

21    into care"); AR 855–56 (July 2015: "presents with a complaint of Blurring of

22    vision"); AR 968–70 (June 2016: "presents with a complaint of muscle weakness").

23    [38] AR 1022–24.

that, due to the nature of the disease, Plaintiff's symptoms vary such that she sometimes is "fully functional" but that "attacks can leave her with blurred vision, moderate–severe pain, [and] weakness/fatigue."[39]  Dr. Lilya then opined that Plaintiff should be limited to 21–30 hours of work per week.[40]

> b. *The ALJ's Findings*

The ALJ rejected Dr. Lilya's medical opinion, saying,

> I find Dr. Lilya's opinion somewhat vague, in that he does not describe how often she would experience "attacks," he only states that her attacks "can" cause the symptoms described, and he does not elaborate on how long such symptoms would last or to what extent they would limit her.  His statement that she could only work for 21 to 30 hours is speculative at best, based on the reasons he provided as support in this questionnaire.  He apparently based his opinion solely on the claimant's report, as he stated it "sounds very convincing" and his own physical examination showed no particular abnormalities. . . . I cannot conclude that Dr. Lilya's opinion merits greater weight without clearer reasoning and medical support for that opinion.[41]

Arguably, Dr. Lilya's opinion regarding Plaintiff's MS limitations is contradicted by a state-agency reviewing physician, who opined, "Concentration may wax and wane due to MS [symptoms].  Otherwise, capable of sustaining a

---

[39] AR 1022.

[40] AR 1022.  Dr. Lilya also explained that, in addition to neurology-based treatment, Plaintiff requires mental-health treatment because "there is a big psych component." AR 1023.

[41] AR 1577.

normal [8-hour] work day or [40-hour] work week."[42]  But that reviewing opinion was given as an assessment of Plaintiff's *psychologically based* limitations and did not necessarily address Plaintiff's MS-related limitations.  Still, even assuming there to be a meaningful conflict between the medical opinions, the ALJ still failed to provide specific and legitimate reasons for rejecting Dr. Lilya's opinion as a treating physician.

### c.    *The ALJ's Consequential Errors*

As an initial matter, Dr. Lilya explained that, by the very nature of the disease, Plaintiff's MS symptoms will vary.  Thus, saying that flareups of Plaintiff's MS "can" cause her to suffer from blurred vision, pain, weakness, and fatigue is not "vague" so much as reflective of the variability in Plaintiff's MS symptoms.  Similarly, by indicating that Plaintiff's MS symptoms occur at sufficient severity, frequency, and duration to prevent her from working 10–19 hours of a 40-hour work week, Dr. Lilya did opine—albeit indirectly and somewhat broadly—as to how long Plaintiff's symptoms would last and to what extent they would limit her, on average.

Importantly, the record belies the ALJ's finding that Dr. Lilya "apparently based his opinion solely on the claimant's report."  First, the "sounds very

---

[42] *See* AR 109 (state-agency reviewing physician opining); *cf. also* AR 1580 (ALJ citing AR 109 in support of finding the state-agency physician opined that Plaintiff's MS symptoms "would not preclude a normal full-time work schedule.").

convincing" language quoted by the ALJ appears to have been initially entered by a different provider and then carried forward in future treatment notes by multiple physicians, including Dr. Lilya.[43]  Second, the very next sentence of the quoted language reads, "She has MRIs, spinal taps, double vision, optic neuritis all [consistent with] MS."[44]  And the record contains such medical evidence, including an MRI from about two months before Dr. Lilya gave the opinion at issue.[45]

The record shows that Dr. Lilya had much more evidence available to him on which to base his opinion than just Plaintiff's self-reports.[46]  Moreover, "[i]f the

---

[43] See, e.g., AR 865 (April 2015: Sara Cate, MD, including quoted language in treatment note); AR 1847 (July 2015: Dr. Lilya including quoted language); AR 951 (Aug. 2016: John Asriel, MD, including quoted language).

[44] See, e.g., AR 865, 1847, 951.

[45] See, e.g., AR 1347–48 (June 2015: physician comparing recent MRI with a May 2015 CT scan and finding it indicated "Multiple sclerosis and history of optic neuritis"); AR 1035 (Aug. 2015: physician analyzing MRI results from 2009 and October 2010 and finding them consistent with MS); Cf. also AR 789 (May 2014: Dr. Lilya indicating he would provide only a "short supply" of hydrocodone to help with leg pain that was "[l]ikely related to MS," and that he would need to better ascertain the basis of Plaintiff's MS diagnosis after she delivered her baby).

[46] See, e.g., AR 772 (Sept. 2014: physical exam showing "Mild trace edema hand/feet"); AR 766 (Nov. 2014: treatment note with identical physical-exam

ALJ thought he needed to know the basis of Dr. [Lilya]'s opinions in order to evaluate them, he had a duty [and two opportunities] to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."[47]  After all, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[48] And this duty is triggered where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[49]  A plain assertion that the treating physician's opinion is unsupported or contradicted by other records does not constitute "specific and legitimate reasons."[50]

---

findings); AR 858 (June 2015: Plaintiff presenting with persistent vision problem but there being "no signs of optic neuritis or uveitis per ophthalmology").

[47] *See Smolen v. Chater*, 80 F.3d 1288 (9th Cir. 1996) (citing 42 U.S.C. § 405(d)(1988); 20 C.F.R. § 404.950(d); 20 C.F.R. § 404.1527(c)(3)).

[48] *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

[49] *See Tonapetyan v. Halter*, 242 F.3d 1114, 1150 (9th Cir. 2001); *Smolen,* 80 F.3d at 1288.

[50] *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the

The ALJ's errors are consequential. According to the vocational expert's testimony, Plaintiff would have been considered disabled if the assessed RFC had included Dr. Lilya's opinion regarding the maximum number of hours Plaintiff could consistently work.[51]

**B.    Symptom Reports: Plaintiff shows further error.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her symptom reports. Much of the five-step evaluation process—including the analysis of the claimant's symptom reports—relies at least in part on the ALJ's assessment of the medical evidence.[52] Therefore, having already found the ALJ reversibly erred in assessing Dr. Lilya's medical opinion, the Court need not address Plaintiff's remaining arguments. Nonetheless, because they weigh against finding that further proceedings would be of benefit, the Court notes a few striking problems with the ALJ's assessment of Plaintiff's MS symptoms and related testimony.

### 1.    "Sit and Squirm" Jurisdiction

The ALJ cited his own observations (and those of the prior ALJ) of Plaintiff's ability to answer questions at the hearings as reasons to discount Plaintiff's reports

---

level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

[51] *See* AR 1638–39.

[52] *See* 20 C.F.R. §§ 404.1529(c), 416.929(c) (2016); S.S.R. 16-3p.

regarding memory problems.[53]  Courts in the Ninth Circuit disapprove of such "sit and squirm" jurisprudence.[54]  Additionally, the evidence of record is mixed regarding Plaintiff's memory.[55]  The ALJ failed to adequately identify what symptom claims were being discounted and what evidence—apart from the ALJs' personal observations—undermined those claims.[56]

### 2.    **Misstatement of Plaintiff's MS-Flareup Testimony**

In assessing Plaintiff's symptom reports, the ALJ said, "She reported that larger flare-ups occurred monthly, some of which last a month and cause brain fog and visual disturbance."[57]  Later in his decision, the ALJ again wrote that Plaintiff

---

[53] AR 1578.

[54] *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

[55] *See, e.g.*, AR 109 (June 2016: state-agency reviewing physician indicating Plaintiff had no memory limitations but that her MS could cause *concentration* difficulties); AR 1010 (Nov. 2016: mixed results on memory tests); AR 1046 (June 2017: "Recent and remote memory is intact."); AR 2020 (Oct. 2019: Plaintiff reporting memory problems).

[56] *See Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims).

[57] AR 1576.

1    "stated she had four to five major flare-ups since her diagnosis, which is contrary to

2    her statement at the most recent hearing that she had large flare-ups on a monthly

3    basis."[58]  As Plaintiff points out on appeal, the ALJ misstates Plaintiff's testimony.

4        At the hearing, Plaintiff distinguished between "little" and "big" MS

5    flareups.  She testified that she suffered from *small* flareups monthly.  Plaintiff

6    said she would have a big flareup "probably a couple times a year."[59]  The ALJ

7    failed to give due consideration to this fundamental aspect of Plaintiff's MS-

8    symptom reports.

9        **3.    Misstatement of Plaintiff's Back-Pain Testimony**

10       The ALJ said, "The claimant's reported activities contradict her 2018

11   testimony that she could not work more than five minutes at a time because of

12   back pain."[60]  This, too, misstates Plaintiff's testimony.

13       Throughout her testimony, Plaintiff consistently conveyed that what she

14   found most problematic was the uncertainty created by the variable and

15   unpredictable nature of her MS symptoms.  At the 2018, hearing, she explained,

16           There's uncertainty as to if I wake up in the morning if I'm going to
             be able to walk normally; if I'm going to be able to stand for more
17           than five minutes at a time; how severe the back pain is or if I'm
             even going to be able to see normally.[61]
18

19   _____

20   [58] AR 1578.

21   [59] AR 1620–23.

22   [60] AR 1578.

23   [61] AR 53.

1    Thus, Plaintiff never testified that her back pain limited her to working five

2    minutes at a time.  Rather, she reported that her MS symptoms varied to such a

3    degree that she could quickly go from functioning at essentially a normal level on

4    one day to having severely limiting symptoms on another.  The ALJ improperly

5    misstated Plaintiff's testimony and used it against her.

6    **4.    <u>General Failure to Account for the Variable Nature of MS</u>**

7    Much of the ALJ's analysis suggests a failure to properly account for the

8    flareup nature of Plaintiff's MS and the variability in her resulting symptoms.  For

9    instance, in finding that Plaintiff's activities were inconsistent with her symptom

10   reports, the ALJ wrote, "The claimant's physical therapist stated in December 2017

11   that the claimant was 'able to lift a grocery bag, laundry bag, and her small

12   children without pain most of the time.'"[62]  But the ALJ again left off the very next

13   sentence, which stated, "When she has pain she won't lift anything until the flare-

14   up subsides."[63]  Similarly, the ALJ relied on Plaintiff's ability to *sometimes* engage

15   in certain activities—such as driving and babysitting—despite Plaintiff having

16   clearly explained that she refrained from such activities during flareups.[64]  If the

17

18   ───────────────

19   [62] AR 1578.

20   [63] AR 1076.

21   [64] *See, e.g.*, AR 1578, AR 50–51 (Plaintiff testifying, "there's just times where I just

22   won't drive," and explaining that she relies on neighbors a few times per month to

23   drive her children to school.).

1    ALJ gave any consideration to the nature, severity, or frequency of Plaintiff's MS

2    flareups, he did so silently, with no indication that the assessed RFC accounts for

3    flareups.[65]

4    **C.    Reversal: Plaintiff shows an award of benefits is appropriate.**

5         Remand for further administrative proceedings is the usual course when a

6    harmful error occurs in the administrative proceeding, except in rare

7    circumstances.[66]  This is such a case of rare circumstances.  First, the ALJ failed to

8    provide legally sufficient reasons for rejecting the medical opinion of Dr. Lilya.[67]

9         Second, the Court finds further administrative proceedings would be of no

10   benefit.[68]  The Commissioner has had two opportunities to develop the record and

11

12   _____

13   [65] *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ

14   to build an accurate and logical bridge from the evidence to [his] conclusions so

15   that we may afford the claimant meaningful review of the SSA's ultimate

16   findings."); *cf. Smolen*, 80 F.3d at 1287 n.7. ("The Social Security Act does not

17   require that claimants be utterly incapacitated to be eligible for benefits, and many

18   home activities may not be easily transferable to a work environment where it

19   might be impossible to rest periodically or take medication.").

20   [66] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)

21   (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

22   [67] *See Treichler*, 775 F.3d at 1100–01.

23   [68] *See id.*

conduct administrative hearings.  Notably, in August 2020, when the Court previously remanded this case, the Court expressly tasked the Commissioner with giving proper consideration to Dr. Lilya's disabling opinion and to Plaintiff's symptom testimony.[69]  If the Commissioner had remaining questions about the basis for Dr. Lilya's opined limitations, this was the opportunity for the ALJ to develop the record.  "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[70]  The Court therefore finds it appropriate to credit as true the opinion of Dr. Lilya.

Third, when the improperly rejected medical opinion is fully credited, the vocational expert's testimony requires a finding that Plaintiff is disabled.[71]  Dr. Lilya's opinion establishes that Plaintiff would exceed the level of absenteeism and off-task time tolerated by employers.[72]  An award of benefits is therefore warranted.

---

[69] AR 1688–91.

[70] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

[71] *See Treichler*, 775 F.3d at 1101.

[72] *See* AR 1638–39 (testifying that exceeding two unexcused absences per month or being off task more than 20% of the time—including provided breaks—would render someone unemployable).

1

## V.    Conclusion

2        Plaintiff establishes that the ALJ reversibly erred.  Further, the Court finds

3  this to be a rare case in which the circumstances warrant remanding the matter for

4  an award of benefits.

5        Accordingly, **IT IS HEREBY ORDERED**:

6    **1.**    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is

7            **GRANTED**.

8    **2.**    The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is

9            **DENIED**.

10   **3.**    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

11   **4.**    The decision of the ALJ is **REVERSED**, and this matter is

12           **REMANDED** to the Commissioner of Social Security for immediate

13           calculation and award of benefits.

14   **5.**    The case shall be **CLOSED**.

15       IT IS SO ORDERED. The Clerk's Office is directed to file this order and

16  provide copies to all counsel.

17       DATED this 6th  day of March 2023.

18       _____

19            EDWARD F. SHEA
         Senior United States District Judge

20

21

22

23